Good morning, Your Honors. May it please the Court, my name is Inge de Bruyn and I represent the plaintiff appellant, Jocelyn Bundy, in this matter. This appeal concerns the dismissal for foreign non-convenience of a copyright infringement suit brought by a U.K. citizen against four California defendants. The main cause of action in this suit concerns violations of U.S. copyright law resulting from the defendants' actions in California. Counsel, does your client have a U.S. copyright? Yes. She does? We submit that she does, yes. You're arguing that she actually has a U.S. copyright? I'm alleging that she has a U.S. copyright. As opposed to a U.K. copyright that is enforceable in some manner in the United States under the Copyright Act. Well, my whole argument is that contrary to what opposing counsel has stated in his briefs, there's a difference between U.K. work and a U.K. copyright. Copyrights are accorded under national law, so a U.K. work would technically have a multitude of copyrights, so it would have protection under U.S. law, which would be U.S. copyright. Protection is different than having a U.S. copyright interest. Protection, you can enforce a copyright that is a U.K. copyright in the United States pursuant to a treaty if it's applicable. However, you even allege in your complaint that you have a U.K. copyright interest that you're attempting to enforce in the United States. I respectfully disagree with that analysis. It is protection under the U.K. Where was the work created? The work was created in England. By a U.K. citizen. By a U.K. citizen, correct. Correct. Yes, but the U.K. cannot accord protection in the U.S. to copyrights that they issue. No, that's not true. We have treaties. We have international treaties by which you enforce your copyright interests. Yes, and under those treaties, those treaty states... However, this work was created before the Berne Convention, which you cite in your complaint as the applicable treaty that allows you to enforce the U.K. copyright in the United States. It's actually the U.S. Copyright Act that offers the protection, not the Berne Convention directly. Okay. Well, it's the Berne Convention itself, as you allege in your complaint. Okay. Do you understand the difference between a U.K. copyright interest and a United States copyright interest? I do. I think I do. Okay, what is it? Every country grants copyright protection under their own national laws, so they determine whether a work gets copyright protection in the country, yes or no. So a U.K. work, it will depend on each national law whether or not they will grant protection to a foreign work. So in that sense... So now you're saying that it's a foreign work, which it is. It's a foreign work. It's a foreign work. There's no discussion about that. It's not a U.S. copyright that you're trying to enforce. You're trying to enforce a copyright in a foreign work. Exactly. I'm trying to enforce a copyright in a foreign work, but the copyright would be granted under U.S. law. No, the enforcement, the enforceability, can I take you in a slightly different direction? Right. Okay. At the outset of your lawsuit, the only issue was whether your client had a copyright interest of some sort that was being infringed by Nirvana. And the copyright interest that you alleged was one that arose under United States law as incorporated into the Copyright Act from the Berne Convention, all right? If we were still operating under the original complaint, I might agree with you that the issue of principal concern is your asserted interest that there's been U.S. copyright infringement. But for reasons that are not apparent to me, you amended your complaint to assert claims of copyright infringement in the U.K. and copyright infringement in Germany, correct? I did not technically amend the complaint, Your Honor. So I, in sending cease and desist letters to opposing counsel, I attached a draft complaint originally that did not get filed. It's never been filed. Right. And so there was only one complaint filed with the district court. Okay. Can I ask? You can't allege a U.S. infringement claim unless you prove ownership of a copyright in the U.K. That's your foreign work requirement. Correct. So it is kind of a threshold issue whether you have a copyright under U.K. law. Correct. I would... And is that a factual question or a legal question? I think in this case, normally it's a mixed question of law and fact. I think in this case, it has become more of a factual issue because opposing counsel has argued... A legal conclusion, whether something qualifies as a foreign work, whether you have ownership of a copyright in the U.K., those are all legal conclusions. You can't dress them up as factual questions when it's a legal question. So I think on a motion to dismiss, we can't just assume that to be true. Those are not facts. Those are legal conclusions, right? Okay. I think the argument there would be opposing counsel has argued that potentially under U.K. law, there would be two other potential owners, and we have obtained declarations from both those parties claiming that they do not own the copyright in the illustration. So just as a practical matter... This is on forum nonconvenience. And so your argument is that it's more that because, as I understand your argument, you're asserting that you have a U.S. interest, and that's why the case shouldn't be heard in the U.K. However, as I'm hearing you discuss the co-ownership issue, that's all under U.K. law, right? Correct. So why shouldn't it be heard in the U.K.? Because I think there's a closer nexus to the U.S. than there is to the U.K. All four defendants are in California. The infringing activity took place in California. It is in violation. The main causes of action are violation of U.S. law. So the ownership issue, although it should be determined under foreign law, should not really dominate the entire forum nonconvenience analysis. Your argument essentially is that under Lucasfilm, an English court, would not consider the threshold question of ownership to be the principal concern of the lawsuit. Is that the essence of your argument? The essence of my argument is that the ownership issue has become sort of hypothetical, in that if there's only three possible owners and two of them have stated that they are not, then there's not really a dispute about ownership anymore that needs to be resolved under foreign law. But to follow up on something that Judge Wardlaw suggested, isn't it possible that as a matter of U.K. law, nobody has a copyright in this illustration, this rather famous illustration that I must tell you I have associated with Nirvana and no one else since about 1989? Right. I'm old. Right, well. Okay, but then I would argue if no one owns the copyright, then that's an issue that can also be decided by a U.S. court. Yes, a U.S. court could adjudicate that issue, no question about it. Right, and I think it should because assuming we do have a copyright, it will have to move to the next stage and adjudicate the infringement of it, which U.K. courts will not do because U.K. courts say that if the validity of the protection under a foreign law is at issue, then we're not going to exercise jurisdiction over that issue. My question. But you would agree having negative evidence, right, two parties saying they don't own a copyright is different than affirmative evidence that your client's grandfather does, right? I mean, there could be other challenges to ownership. And also that happened, what, the publication was 74 years ago? Yes. You don't know whether Random House may have done some assignment at some point. You don't know the full chain of ownership. They're saying I don't currently own it, but it's unclear, right? You don't have the full history just based on those two very short declarations. I would have to agree with you on that, yes. But I think the evidence of any ownership is not necessarily in the U.K. And my point is that opposing counsel have the burden to show that it would be inconvenient and that the evidence is, in fact, in the U.K. and would be hard to gain access to. I don't think they have made that showing. I agree it's not your burden. Do you have any other questions? No. Judge Wardlaw? All right. Okay. I think has the time elapsed on that? Oh, you're over time. Okay, thank you. All right, thank you. Good morning. May it please the Court? My name is Mark Lee, and I'm representing appellee Nirvana LLC. My co-counsel will speak on behalf of the other appellees in a few moments. It sounds like the Court already has a very good understanding of the facts here. A British plaintiff seeks to enforce an English copyright that she claimed for the first time over 70 years after her grandfather created it, and so she files suit in California. Why? Well, it takes a while to find out, but as she eventually acknowledged in the practical consideration portions of her brief, because the law in the U.S. allows contingent fee counsel and the law in England does not. Well, that's a nice happenstance, but isn't it also the case that your client is in California and that she is alleging, whatever her interest may be, she is alleging that it's being infringed by a variety of manufacturers of T-shirts and this and that under license to your client, which is an American corporation. Well, that's all correct. A California corporation. Yes, that's all true. So why is it so shocking that she sued in California? Because of the claims that were ultimately alleged. As counsel already referenced, this began when we received a letter and she alleged a pretty straightforward U.S. copyright infringement claim. From our perspective, that claim had some issues. I pointed those out. So why didn't you make a motion to dismiss? Well, if she only filed a U.S. copyright infringement claim, we very well might have done that. But she didn't. The only complaint she filed alleged U.S., U.K., and German copyright infringement claims. She just said she didn't file that complaint. She did not file the one with only a U.S. copyright infringement claim. She did file the one with the U.S., English, and German copyright infringement claims. And at that point, a 12v6 motion would not have dismissed the case. It might have dismissed the U.S. case, but then the U.S. court would have been faced with an English and a German copyright infringement claim. And we felt at that point, given the evidence we'd uncovered about the alleged ownership of the copyrighted issue, this case really did deserve to be resolved in a jurisdiction where the legal issues and the factual issues could be more readily discovered, which was the United Kingdom. But you don't deny that a U.S. court would find those issues justiciable and would take cognizance of them? A court certainly would have discretion to do that. But, of course, in this case, the trial court exercised her discretion to rule that it was better for the dispute to be resolved in the United Kingdom and that she granted the motion on four nonconvenience grounds. Are you bound to allow Ms. Bundy to revive her claims in a U.S. court if the U.K. court declines jurisdiction? Yes. That was a condition of the district court's grant of the motion. She had several conditions, actually. But one of them was that if the U.S. copyright infringement claim at least was not accepted by the U.K. court, then she could come back to the U.S. claim. So let's say the U.K. claim is out for some reason. Let's say it's just a U.S. and a German. You're not going to try to remove this to a German court, are you? Are you bound? If the U.K. is here, are you bound to that? Or are you going to try to move it to German? We're bound if the U.K. court rejects the U.S. copyright infringement claim. I'm not sure, well, certainly under the order, we're not bound. If the U.K. court rejected both and she tried to come back and assert a U.S. and a German claim together, I'm not sure what we would do, actually. But I don't think we would be bound to accept jurisdiction in this U.S. court in that circumstance. Even over the U.S. claim? I'm not sure what you mean, Your Honor. When you say over the U.S. claim. Oh, if only the U.S. claim. If she came back on a U.S. claim and a German claim, aren't you bound to litigate the U.S. claim here? Well. If they kick it out under Lucasfilm. If by bound, you're asking does the court's order and its condition require that, I would respectfully disagree. I don't think it does. Whether we would actually decide to try to do a second motion on a nonconvenience grounds, I'm not sure. And I would have to see what the circumstances were at that point. You have 58 seconds left. Okay, Your Honor. In that case, I should defer to my. She has four minutes independently. You had six. Oh, very good. In that case, I'd be happy to answer any questions Your Honors may have. Otherwise, I'll submit. You also agreed to abide by the federal rules of civil procedure in all discovery. That's correct, Your Honor. Yes. All right. No other questions? Judge McMahon, do you have any other questions? No. We're done. Thank you. We'll give those 24 seconds to you if you want them. You have four minutes and 24 seconds. May it please the Court. Leah Solomon of Katten, Meech, and Rosenman on behalf of Appelli Defendants, Live Nation Merchandise LLC, Silva Artist Management LLC, and Merch Traffic LLC. Appellant concedes that in this case, the district court analyzed and evaluated all of the Gilbert factors. She simply disagrees with the court's conclusion. But mere disagreement doesn't amount to an abuse of discretion, just as it didn't support grounds for reconsideration below. And given the time constraints, I'd like to focus on those private and public interest factors and highlight just a couple of them that the district court found weighed most heavily in favor of dismissal here. Starting on the public interest side, I'd like to highlight the court's familiarity with governing law factor. As Judge Koh observed, there is a threshold issue in this case that's governed by U.K. law, and appellant concedes that that's a U.K. law issue. So I've got two questions for you about that. The first one is, do you agree with your co-counsel that a U.S. court could adjudicate that issue? We would take cognizance of that issue. We wouldn't rule it non-justiciable. I do agree that a U.S. court would have discretion to adjudicate that issue. So did the district court at all consider whether a U.S. court might be the only court that could adjudicate or could clearly adjudicate all of the issues in the case? Well, yes, I do think that the court addressed that when they addressed the justiciability issue under Lucasfilm and determined that a U.K. court could adjudicate all of the claims at issue. Okay, well, supposing we go to the U.K. and the U.K. court says, your U.S. court didn't read Lucasfilm correctly, we will not adjudicate whether she has a valid copyright interest under United States law, whether you call it enforcing a U.K. copyright or, as your opponent calls it, a U.S. copyright. We will not adjudicate that issue, supposing they say that. And it comes back, are you expecting the U.K. court to, for example, issue an advisory opinion on the issue of ownership before it comes back? Will a U.K. court do that? Why are we doing this frolic and detour if we know that a U.S. court will adjudicate every issue in the case? I think you have a couple questions in there that I'd like to address. First being, we don't expect that the U.K. court would issue an advisory opinion. We expect that they'd be able to take the entire case would be justiciable. I know that, but assume for a moment that they don't think that. My expectation would be that they didn't dismiss the entire case, but that's precisely why the district court in this case built into their order a requirement that the ability for the plaintiff to refile in the U.S. if that happens. And so that condition protects the plaintiff. But how does it mean that you've met your burden on a forum nonconvenience motion to show that there's an adequate alternate forum? Because based on the court's analysis of Lucasfilm, and we agree with that analysis, the court determined that those claims are justiciable under U.K. law and would be justiciable by a U.K. court, not that a U.K. court would dismiss them. However, to the extent that there's any lingering doubt, the district court did build that condition into its order as a sort of a backstop in case the U.K. court reached Lucasfilm differently than the district court did here. But this issue, the fact that there's been so much discussion about this issue, merely underscores the fact that there are complicated issues of U.K. law at issue in this case that should be adjudicated in a U.K. court. And that is the reason that the district court determined that this case should be dismissed and is better adjudicated in another forum. The U.K. court can address complicated issues of U.S. copyright law? No, of U.K. copyright law. And U.S. copyright law? Well, again, Your Honor, as Judge Koh observed, there's a threshold issue here, and that's the ownership issue. So if this case were to remain here in the United States, the U.S. court would inevitably have to apply U.K. law to determine the ownership issue. And those issues are complex. I would direct Your Honors to go back and review the declaration of Mr. Skrine. Understood. And so they are complex issues that this court would have to adjudicate. Now, if a U.K. court adjudicates those issues, if it adjudicates the threshold issue of ownership under U.K. law in favor of appellee defendants, then the U.S. claims are resolved. That issue has the potential to be dispositive, such that the U.K. court may never have to reach any U.S. question under U.S. law. And again, moving on to the private factors, I did also want to highlight the availability of documentary evidence factor, because this is another factor that weighs very heavily in favor of dismissal in foreign nonconvenience grounds. As my counsel alluded to, there are documents, witnesses located abroad that bear on the ownership issue and that that can't be easily obtained here in the U.S. So even though a U.S. court may have the ability to adjudicate, or I guess the jurisdiction to adjudicate the ownership issue, it may be precluded from doing so just from the lack of evidence that can be obtained from the U.K. You're over time. I'm sorry. So if you could quickly wrap up. Sure, yes, Your Honor. Ultimately, there was no abuse of discretion here. The court evaluated all of the factors and came to the right conclusion. So we would ask that you affirm. Thank you. I'll just confirm no further questions, Judge McMahon or Judge Wardle. Okay. All right. Thank you. If my colleagues are okay, I would give counsel two minutes. Is that all right? Fine. Okay. Go ahead, please. Thank you. I heard opposing counsel say that there was no abuse of discretion, that the correct standard was applied. Again, I just want to reiterate that I disagree because I feel strongly that under Ninth Circuit precedent, the burden was on the defendants to prove that there was oppression and vexation that was so severe as to be out of proportion to the plaintiff's convenience. It's presumptively convenient for the plaintiff to come here because, in her opinion, all the evidence is here, all the witnesses are here, and, yeah, the defendants are all here. And I think that ultimately the district court did not hold defendants to their burden. That is it. Questions, Judge McMahon, Judge Wardle? All right. Thank you very much. All right. Thank you to counsel for both sides. This case is submitted.
judges: WARDLAW, KOH, UNKNOWN